Case 14-02176-GLT    Doc 518    Filed 12/29/17    Entered 12/29/17 16:27:55    Desc Main
Document    Page 1 of 16

FILED
12/29/17 4:10 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: : | |
| : | Case No.  13-23855-GLT |
| **PRITHVI CATALYTIC, INC.** : | Chapter 11 |
| **n/k/a ABILIUS, INC.**, : | |
| : | |
| Reorganized Debtor. : | |
| : | |
| : | |
| **PRITHVI CATALYTIC, INC.** : | Adv. Proc. No. 14-02176-GLT |
| **n/k/a ABILIUS, INC., KYKO GLOBAL**, : | |
| **INC.**, and **KYKO GLOBAL GMBH**, : | Related to Dkt. Nos. 405, 408, 418, 450-452 |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| **MICROSOFT CORPORATION**, : | |
| **COLLABERA, INC., BEYONDSOFT** : | |
| **CORPORATION**, **IAN OLSON**, and : | |
| **SHANNON KROHN**, : | |
| : | |
| Defendants. : | |

## MEMORANDUM OPINION

Counsel:    Kathleen Goldman, Esq. and Jayson Macyda, Esq. on behalf of Prithvi Catalytic, Inc. n/k/a Abilius, Inc., Kyko Global Inc., and Kyko Global GMBH.

Richard J. Parks, Esq. and Wendy E. Lyon, Esq. on behalf of Microsoft Corporation

Lawrence Del Rossi, Esq. and Lynne Anne Anderson, Esq. on behalf of Collabera, Inc., Ian Olson, and Shannon Krohn

Alexander W. Saksen, Esq. and Christina Magulick, Esq. on behalf of Beyondsoft Corporation

Before the Court are the (1) *Motion for Judgment on the Pleadings Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(c) filed by*

*Defendant Beyondsoft Consulting Inc.*;[1] (2) *Motion for Judgment on the Pleadings Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rules of Civil Procedure 12(c), 12(b)(1) and 12(b)(6)*, and *Joinder to BeyondSoft's Motion for Judgment on the Pleadi*ngs filed by Defendants Collabera, Inc., Shannon Krohn, and Ian Olson;[2] (3) *Joinder by Microsoft Corporation to the Motion for Judgment on the Pleadings Filed by Beyondsoft Consulting, Inc.*;[3] and (4) Plaintiffs' *Responses* to the three Motions. For the following reasons, the Motions are GRANTED.

## FACTUAL BACKGROUND

The parties are well acquainted with the background of this case and proceeding, and the Court will only present those facts necessary to understand the current dispute.[4]

The Reorganized Debtor, Abilius, Inc. ("Abilius"),[5] was an information technology staffing company that deployed teams of highly skilled employees to work on projects at jobsites maintained by Abilius' customers. Before Abilius filed its bankruptcy petition, approximately 90 percent of its revenue derived from one client, Defendant Microsoft Corporation.

Two of Abilius' competitors in the information technology staffing industry were

---

[1] Dkt. No. 405.

[2] Dkt. No. 408.
[3] Dkt. No. 418.

[4] The Court has written extensively on the background of this case. For additional information, see the Court's opinions in Prithvi Catalytic, Inc., *et al*., v. Microsoft Corp., *et al*. (In re Prithvi Catalytic, Inc.), 571 B.R. 105 (Bankr. W.D. Pa. 2017); Prithvi Catalytic, Inc., *et al*., v. Microsoft Corp., *et al*. (In re Prithvi Catalytic, Inc.), 557 B.R. 403 (Bankr. W.D. Pa. 2016); and Prithvi Catalytic, Inc., *et al*., v. Microsoft Corp., *et al*., 2015 Bankr. LEXIS 1185 (Bankr. W.D. Pa. April 8, 2015).

[5] The Court authorized the Reorganized Debtor to change its name from Prithvi Catalytic, Inc. to Abilius, Inc. on March 27, 2014. Some documents in this proceeding may refer to the Reorganized Debtor under its old name or abbreviation (PCI).

Defendants Beyondsoft Consulting, Inc. and Collabera, Inc.[6] A primary focus of the dispute in this adversary proceeding is the alleged "poaching" of Abilius' employees by those two competitors and their subsequent reassignment to Microsoft projects as employees of those competitors.

Abilius, then known as PCI, filed a petition for bankruptcy relief on September 10, 2013, after Plaintiff Kyko Global, Inc. ("Kyko")[7] obtained a $17 million judgment against it and several of its affiliates.[8] From the onset of the bankruptcy proceeding, Kyko was active in the case and sought the appointment of a chapter 11 trustee.[9] Kyko also filed a claim for $18,473,630.[10]

Abilius did not file a plan within 120 days of filing the petition. Pursuant to 11 U.S.C. § 1121(c), Kyko filed its own plan on February 12, 2014.[11] The Court confirmed Kyko's *Second Amended Chapter 11 Plan for Prithvi Catalytic, Inc.* (the "Confirmed Plan") on May 30, 2014.[12] Kyko acknowledged that the Effective Date of the Confirmed Plan occurred on June 26,

---

[6] The remaining two defendants, Ian Olson and Shannon Krohn, were previously employed by Abilius before they accepted positions with its competitor, Collabera. For the purpose of this adversary proceeding, Olson and Krohn are considered co-defendants with Collabera and together form the "Collabera Defendants."

[7] The Court will refer to both Plaintiffs, Kyko Global, Inc. and Kyko Global GmbH, as "Kyko."

[8] For information on the underlying conflict between Kyko and Abilius, see Kyko Global, Inc. v. Prithvi Info. Solutions, Ltd., 2016 U.S. Dist. LEXIS 76778, at *10-20 (W.D. Wash. June 13, 2016).

[9] Bankr. 13-23855-GLT, Dkt. No. 19. The trustee motion was withdrawn without prejudice. Id. at Dkt. No. 77. No trustee or unsecured creditors committee was appointed in the bankruptcy case.

[10] Claim no. 20-1. Paragraph 7 of Claim 20-1 asserts that the claim arises from its judgment in the Kyko Global, Inc. v. Prithvi Info. Solutions, Ltd. case, that it is secured but unperfected, and Kyko intends to treat the claim as an unsecured claim if a plan is confirmed.

[11] Case No. 13-23855-GLT, Dkt. No. 179.

[12] Case No. 13-23855-GLT, Dkt. No. 249.

2014.[13]

Two provisions of the Confirmed Plan are relevant to the current dispute regarding the standing of Kyko in this adversary proceeding. According to § 4.3(A) of the Confirmed Plan, Kyko received 100 percent of the new equity in Abilius in exchange for a $100,000 reduction in its claim. The balance of Kyko's claim against Abilius was to be paid over a period of six years. And according to § 3.1(c), Kyko sought an allowed administrative claim for "fees and expenses incurred in connection with the Chapter 11 Case." As discussed below, the Court will strike this provision in § 3.1(c) of the Confirmed Plan by separate order as a scrivener's error.

Plaintiffs allege that the "lynchpin" of the Confirmed Plan was the retention and expansion of the Microsoft business. However, on May 17, 2014, shortly before plan confirmation, Abilius learned that its contract with Microsoft for the "Sharepoint Project" would not be renewed and instead future work had been awarded to Beyondsoft. On June 4, 2014, Microsoft informed Abilius that part of its contract for the "Mission Control" project would not be extended and was awarded to Collabera.

Immediately after confirmation, on June 2, 2014, the Court entered its *Post-Confirmation Order and Notice of Deadlines*.[14] The Post-Confirmation Order set a 30-day deadline for filing all administrative claims under the plan.

Kyko submitted its *Motion for Payment of Professional Fees and Expenses Based Upon Substantial Contribution* seeking an administrative claim under section 503(b)(3)(D) for its "substantial contribution in connection with the chapter 11 case."[15] After a hearing on the

---

[13] Case No. 13-23855-GLT, Dkt. No. 270.

[14] Case No. 13-23855-GLT, Dkt. No. 252.

motion, the Court ordered a further supplement to "include the sum total of the fees (broken down by category) that it seeks to have paid by the estate as an administrative expense."[16] The supplement to the motion was submitted on October 1, 2014, in which, among other items, Kyko sought an "administrative expense for substantial contribution to the plan and disclosure statement" of $108,721.75.[17]

On October 14, 2014, the Court granted Kyko's motion in part, finding that "Kyko's efforts related to the Plan made a substantial contribution to the Debtor's case and the projected recovery for creditors."[18] Once again, however, the Court had to require a supplement from Kyko to submit "its invoices, broken down by category."[19] Kyko submitted the requested information,[20] and the Court ultimately granted "an administrative expense claim in the amount of $137,608.25 based on the Plan Proponents' substantial contribution to this bankruptcy case."[21]

## The Adversary Proceeding

Plaintiffs filed their complaint initiating this adversary proceeding on August 21, 2014. The complaint asserted ten counts. After the Court's rulings on the dismissal and summary judgment motions (see footnote 4), the following counts remain for adjudication:

---

[15] The motion was initially submitted on July 2, 2014 in the main bankruptcy case but was resubmitted twice to cure deficiencies in the motion. See Case No. 13-23855-GLT, Dkt. Nos. 271, 275, 280. The various resubmissions and supplements also requested expenses related to Kyko's prosecution of a motion to appoint a chapter 11 trustee. Because these expenses were incurred before Kyko became a Plan Proponent, we do not discuss them here.

[16] Case No. 13-23855-GLT, Dkt. No. 307.

[17] Case No. 13-23855-GLT, Dkt. No. 316.

[18] Case No. 13-23855-GLT, Dkt. No. 317, p. 5.

[19] Id. at p. 6.

[20] Case No. 13-23855-GLT, Dkt. No. 320.

[21] Case No. 13-23855-GLT, Dkt. No. 321. The award consisted of $108,721.75 for the substantial contribution made by the Plan Proponents and the balance of the award related to the substantial contribution made in connection with Kyko's motion to appoint a chapter 11 trustee.

*Count 2: Tortious Interference with Contractual Relations against Krohn and Olson.* Count 2 alleges that Krohn and Olson acted intentionally and improperly in their attempts to "poach" Abilius' employees. Collabera hired Krohn away from Abilius in December 2013 to manage its customer accounts (including the Microsoft account) in the Pacific Northwest. Olson joined Collabera in January 2014. Plaintiffs claim that both former Abilius' executives used improper means to lure the Abilius resources over to their new employer in conjunction with an overall effort to transfer the entirety of the CSS/Mission Control work to Collabera.

*Count 3: Civil Conspiracy against Krohn, Olson, and Collabera.* Count 3 alleges that Krohn, Olson, and Collabera agreed to commit the tortious actions described in Count 2. In retaining this count, the Court's summary judgment order observed that Collabera was not named in Count 2 but that it still might be liable under Count 3.

*Count 5: Tortious Interference with Contractual Relations against Microsoft and Beyondsoft.* Count 5 alleges that Microsoft and Beyondsoft acted intentionally and improperly by allegedly "poaching" Abilius' employees and shepherding them to equivalent positions at Beyondsoft.

*Count 6: Civil Conspiracy against Microsoft and Beyondsoft.* Count 6 alleges that Microsoft and Beyondsoft agreed to commit the tortious actions described in Count 5.

*Count 9: Violation of the Automatic Stay and Count 10: Civil Contempt for Violation of the Automatic Stay against Microsoft, Collabera, Krohn, and Olson.* In Count 9, Plaintiffs allege that the actions undertaken by Microsoft, Collabera, Krohn, and Olson in the other counts were intentional and occurred during a time when the automatic stay was in place. Count 10 alleges that Microsoft, Collabera, Krohn, and Olson should be held in civil contempt for violating the automatic stay order.

Beyondsoft, the Collabera Defendants, and Microsoft now move for judgment on the pleadings under Rule 7012 (incorporating Civil Rules 12(b)(1), 12(b)(6),[22] and 12(c)). Defendants seek to dismiss Kyko as a plaintiff on all counts for failure to state a claim on which relief can be granted and that Kyko does not have constitutional, prudential, and/or statutory standing.

---

[22] Defendants commit a common procedural error seeking dismissal of Kyko under Rule 12(b)(6) for failure to state a claim on which relief can be granted, after a responsive pleading has been filed. However, they correctly plead for the same relief under Rule 12(c), applicable by Rule 12(h)(2)(B).

The issue is now ripe for adjudication. The Court has jurisdiction under 28 U.S.C. § 1334 and 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## ANALYSIS

Microsoft explicitly raises the question of the constitutional standing of Kyko in this adversary proceeding:

> In addition to the analysis provided in BeyondSoft's Motion, Microsoft submits that the fundamental elements of standing and jurisdiction require the dismissal of Kyko's claims at this juncture. … As more fully articulated in BeyondSoft's Motion, Kyko simply lacks an identifiable legal injury to provide it standing.[23]

The Court is required to examine constitutional standing before other issues.[24]

Article III of the Constitution limits the judicial power of the federal courts to particular "cases" or "controversies."[25] As the Supreme Court has observed, "[o]ne of the controlling elements in the definition of a case or controversy under Article III is standing."[26] The "irreducible constitutional minimum of standing" contains three elements, rooted in the assumption that the individual bringing a lawsuit has an injury-in-fact:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it

---

[23] Dkt. No. 418 at p. 2, 4.

[24] Warth v. Seldin, 422 U.S. 490, 498 (1975)(holding that constitutional standing is a threshold requirement in every federal case); Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 173 (3d Cir. 2001) ("Constitutional standing is a threshold issue that we should address before examining issues of prudential standing and statutory interpretation.").

[25] U.S. CONST. Art. III, § 2.

[26] Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 598 (2017) (quoting ASARCO Inc. v. Kadish, 490 U.S. 605, 613 (1989)).

must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[27]

To simplify, "Article III standing requires (1) an injury in fact, (2) that is causally related to the alleged conduct of the defendant, and (3) that is redressable by judicial action."[28] The plaintiff bears the burden of proof on each of the three elements.[29] The plaintiff also must demonstrate standing separately "for each claim he seeks to press and for each form of relief that is sought."[30]

Both our Court of Appeals and the Supreme Court stress that the injury-in-fact inquiry is often determinative.[31] The Court of Appeals has explained the extent of the injury-in-fact inquiry:

> A plaintiff alleges injury-in-fact when it claims that it has, or is in imminent danger of having, suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "'actual or imminent, not conjectural and hypothetical.'" The burden is low, requiring nothing more than "'an identifiable trifle' of harm."[32]

Kyko outlined its damage argument in its response to Beyondsoft's motion for judgment on the pleadings:

> Kyko expended resources to conduct due diligence and prepare a plan of

---

[27] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). Commenting on Lujan and Warth, the Third Circuit observed: "These requirements ensure that plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant … [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on … [their] behalf." Wheeler v. Travelers Ins. Co., 22 F.3d 534. 537-38 (3d Cir. 1994).

[28] King v. Governor of the State of N.J., 767 F.3d 216, 223 n. 6 (3d Cir. 2014); see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).

[29] Lujan, 504 U.S. at 561.

[30] Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (citing Davis v. Federal Election Comm'n, 554 U.S. 724, 734 (2008)).

[31] Spokeo, Inc. v. Robins, 136 S. Ct. 1540. 1547 (2016) ("This case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements."); Toll Bros. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009).

[32] Hassan v. City of New York, 804 F.3d 277, 289 (3d Cir. 2015) (citations omitted).

> reorganization, and attempted to salvage PCI's business by not only extending credit but also by taking actions to assemble a management team in place to allow it to emerge from bankruptcy. Section 3.1(c) of the Second Amended Plan of Reorganization expressly preserves Kyko's right to recover the fees and expenses it incurred in connection with being the Plan Proponent. [Doc. No. 224 pg. 17; Case No. 13-23855]. Beyondsoft (and the other Defendants) tortiously interfered with PCI's non-compete agreements during the bankruptcy proceeding. These actions precluded PCI from being able to reorganize under the Plan, which in turn prevented PCI from compensating Kyko for the fees and expenses it incurred as the Plan Proponent. To hear Beyondsoft tell it, Kyko has no recourse to recoup the monies it lost even though, unbeknownst to Kyko and PCI, Beyondsoft (and the other Defendants) surreptitiously made plans to pull PCI's resources away from PCI so that there were no resources left when PCI emerged from bankruptcy. To allow Beyondsoft to get away with this "too bad, so sad" argument would render Section 3.1 of the Second Amended Plan of Reorganization a nullity and reward Beyondsoft's (and the other Defendants') tortious conduct.[33]

To summarize the argument,[34] Kyko incurred "fees and expenses" as the plan proponent to prepare and support a plan of reorganization under the assumption that Abilius would continue as a viable corporation after bankruptcy. However, as a result of the allegedly tortious activities of the Defendants, there were no financial resources left to compensate Kyko for its expenditures as plan proponent, thereby leaving it with a claim for the sums it was otherwise entitled to receive under § 3.1(c) of the Confirmed Plan.

There are two fundamental and fatal errors in Kyko's damages argument. First, the language upon which Kyko relies in § 3.1(c) of the Confirmed Plan was a scrivener's error and was never intended to be included in the final plan documents. Kyko, by its contemporaneous actions, knew it was an error but with the passage of time, it has apparently

---

[33] *Plaintiffs' Memorandum of Law in Opposition to Beyondsoft Consulting Inc.'s Motion for Judgment on the Pleadings Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(c)*, Dkt. No. 450 at p. 10-11.

[34] This is a simplified version of Kyko's damages argument relating to its role as plan proponent. There are also standing and injury arguments relating to Kyko's role as a creditor and the Court's prior rulings in the dismissal and summary judgment orders. These will be discussed below.

forgotten. Second, the true § 3.1(c) that had been distributed to the creditors imposed an obligation on Kyko to seek its fees and expenses in the bankruptcy case by separate motion. Kyko did so and the Court granted the fees and expenses of Kyko as a substantial contribution claim against the bankruptcy estate. Kyko's claim was not only allowed, but it was also paid.[35] Consequently, Kyko has no injury-in-fact resulting from any alleged tortious interference or alleged violation of the automatic stay by the Defendants and no constitutional standing in this adversary proceeding.

### The Strange Tale of Section 3.1(c)

As of April 21, 2014, the Second Amended Plan of Reorganization contained the following text in § 3.1(c):

> **(c) Plan Proponents' Fees and Expenditures.** This Plan and the Disclosure Statement shall constitute a motion for allowance of a substantial contribution claim in favor of the Plan Proponents. On the Effective Date, the Reorganized Debtor shall pay and reimburse the Plan Proponents for fees and expenses incurred in connection with the Chapter 11 case.[36]

This language was the "Original § 3.1(c)," but it was subsequently amended in the course of the bankruptcy proceedings.

On April 22, 2014, the Court held a hearing to consider approval of the disclosure statement to accompany Kyko's plan. At that hearing, Kyko's attorney informed the Court that the U.S. Trustee objected to the language in Original § 3.1(c) and that Kyko agreed to delete the provision from its plan. To resolve the objection, Kyko was prepared to file a motion seeking allowance of its substantial contribution claim and afford parties with an opportunity to object.

---

[35] See *Post-Confirmation Quarterly Summary Report*, Case No. 13-23855-GLT, Dkt. No. 343 showing disbursements of $137,608 for the administrative claims of bankruptcy professionals.

[36] Case No. 13-23855-GLT, Dkt. No. 224. As confirmed, the plan defined the "Plan Proponents" to mean Kyko Global, Inc. and Kyko Global GmbH. Id. at § 1.65.

The Court ordered Kyko's attorney to verify under Certification of Counsel whether the plan documents were amended.[37]

On April 22, 2014, Kyko submitted the Certification of Counsel and attached a revised version of the plan documents but it still identified them as the "Second Amended Plan."[38] The attached plan contained only one change which addressed the U.S. Trustee's concerns in a "Revised § 3.1(c):"

> **(c) Plan Proponents' Fees and Expenses.** The Plan Proponents intend to file a motion seeking allowance for fees and expenses incurred by it in connection with the Chapter 11 Case.[39]

The plan materials submitted to the Court on April 22, 2014, including Revised § 3.1(c), were presumably the same materials distributed to the creditors in the solicitation package.[40]

Kyko submitted its proposed findings of fact and conclusions of law for the plan confirmation hearing on May 30, 2014.[41] Attached to the proposed findings as Appendix A was a copy of the Second Amended Plan containing the Original § 3.1(c) language. In its order entered on May 30, 2014, the Court confirmed the Second Amended Plan which contained the erroneous version of § 3.1(c).

The parties and the Court were apparently unaware of the error. Three days after the confirmation hearing, on June 2, 2014, the Court entered its *Post-Confirmation Order and*

---

[37] Case No. 13-23855-GLT, Dkt. No. 231.

[38] Case No. 13-23855-GLT, Dkt. No. 232. Perhaps the ensuing confusion and errors could have been avoided if the documents were identified as the "Third Amended Plan."

[39] See id. at Ex. D.

[40] There are obvious material differences between the Original and Revised § 3.1(c). Confirming the plan with the original clause would have implied that the motion could be granted without additional notice to the creditors (including information concerning the magnitude of the claim) and a distribution could be made to Kyko as part of the plan. The revision preserved that right to notice and review of the motion.

[41] Case No. 13-23855-GLT, Dkt. No. 247.

*Notice of Deadlines*. Paragraph 2 of that Post-Confirmation Order provided:

> **1. Administrative Expenses and Professional Fees.** All applications for award of compensation or expenses to a trustee, examiner, attorney or other professional person and <u>all other motions for allowance of administrative expenses</u> shall be filed and served within thirty (30) days after the date of this Order, together with a certificate of service.[42]

Consistent with its obligations under the plan and pursuant to the Court's *Post-Confirmation Order*, Kyko submitted its motion for allowance of its substantial contribution claim as an administrative expense.[43] The motion sought an administrative claim under §503(b)(3)(D) for "substantial contribution in connection with the chapter 11 case."[44] The motion argued that the contribution included:

> But for the efforts of the Plan Proponents in this Case, it is likely that unsecured creditors [the largest of which was Kyko] would have recovered $0 on their claims against the Debtor. . . . The Plan Proponents incurred significant fees and expenses from the beginning of the Case in preserving value for the Debtor's estate and preparing, prosecuting, and negotiating the ultimately consensual Plan.
>
> The Plan Proponents' actions made a substantial contribution to the Debtor's estate and they are entitled to allowance and payment of their professional fees and expenses as an administrative expense. . . . As a result of the Plan Proponents' extensive efforts . . . [s]easoned and respected management have been put into place.[45]

In short, Kyko sought a substantial contribution claim based on the totality of its actions in the bankruptcy case. The Court was aware of those contributions, including extensive and diligent preparation and advocacy of the plan, as well as paving the way for the appointment

---

[42] Case No. 13-23855-GLT, Dkt. No. 252 (emphasis added).

[43] Case No. 13-23855-GLT, Dkt. No. 271. The various resubmissions and supplements also requested expenses related to Kyko's prosecution of a motion to appoint a chapter 11 trustee. Because these expenses were incurred before Kyko became a Plan Proponent, we do not discuss them here.

[44] Case No. 13-23855-GLT, Dkt. No. 280.

[45] Id. at 1, 8.

of a key financial executive to take charge of the Debtor's operations and be accountable to the Court. After numerous supplements and amendments, the Court exercised its discretion[46] and awarded a substantial contribution award to Kyko of $137,608.25 under §503(b)(3)(D).[47]

The Court allowed the substantial contribution award as compensation to Kyko for all activities which benefitted the estate as a whole, rather than simply Kyko's interest as a creditor. That Kyko chose to limit its claim to the value of the itemized professional services and expenses does not alter the fact that the Court awarded the compensation based on the value of all of its activities.

In sum, the Court awarded Kyko $137,608.25 for its substantial contribution to the bankruptcy case, including the value of its services as Plan Proponent. Kyko claims in this adversary proceeding that it has been injured by the fees and expenses it incurred as Plan Proponent. The Court has already compensated Kyko for those fees and expenses. There is no injury-in-fact and Kyko will be dismissed as a plaintiff on the grounds that it does not have constitutional standing in this adversary proceeding.

**Other Issues**

The Court's ruling on the pending motions is incomplete without discussing certain other arguments raised by the parties. The Court shall address each of these in turn.

Kyko appears to suggest that a statement in the Court's Opinion on the various motions for summary judgment was already determinative of this matter and allows Kyko to

---

[46] In re Glickman, Berkowitz, Levinson & Weiner, P.C., 196 B.R. 291, 294 (Bankr. E.D. Pa. 1996) ("bankruptcy court has wide discretion to determine the amount of expenses to be awarded under § 503") (citing In re Lister, 846 F.2d 55, 56 (10th Cir. 1988) (citing In re Consolidated Bancshares, Inc., 785 F.2d 1249, 1252 (5th Cir. 1986))); see also Lebron v. Mechem Fin. Inc., 27 F.3d 937, 946 (3d Cir. 1994) (a determination of whether or not a substantial contribution to a reorganization has been made is a question of fact).

[47] Case No. 13-23855-GLT, Dkt. No. 321.

continue to pursue its claims. To this end, Kyko relies on the Court's statement that "plaintiffs" [plural] may pursue their damages theories at trial" because at the time, the Court was aware that Beyondsoft had challenged Kyko's standing in these proceedings.

Ordinarily, the Court is not free to ignore the question of a party's standing. Indeed, it is required to examine standing questions, *sua sponte*.[48] However, where there are multiple plaintiffs in a case, only one must have constitutional standing.[49] In this proceeding, it is unquestioned that Abilius, the debtor, has standing. Of course, this rule does not prevent the Court from dismissing a co-plaintiff who does not have standing, especially in a case such as this where Kyko is seeking damages which are separate and distinct from those sought by Abilius.[50]

The Court is now prepared to rule on Kyko's standing. It now determines that Kyko does not have constitutional standing, nor did it have standing at the time of the entry of the summary judgment order. Consequently, the use of the term "plaintiffs" rather than "plaintiff" was improvident, and only Abilius may pursue its damage theories at trial.

Kyko also argues that as a creditor, it falls within the "zone of interests" that protect its standing. Kyko confuses constitutional standing with prudential standing, and only the latter deals with a zone of interest analysis.[51] And recent caselaw holds that even prudential

---

[48] Waksmunski ex rel. Korbe v. Mitchell, 2009 WL 499455, at *6, n. 4 (W.D. Pa. Feb. 27, 2009) ("the Court has an obligation to raise the issue of standing sua sponte" (citing Desi's Pizza, Inc., v. City of Wilkes-Barre, 321 F.3d 411, 420 (3d Cir. 2003)).

[49] Watt v. Energy Action Educational Foundation, 454 U.S. 151, 160 (1981) ("Because we find [that one plaintiff] has standing, we do not consider the standing of the other plaintiffs.").

[50] Mount Evans Co. v. Madigan, 14 F.3d 1444, 1451-53 (10th Cir. 1994) (analyzing individual plaintiffs' standing separately and dismissing some plaintiffs for lack of standing even though other plaintiffs had standing); We Are America/Somos Am. v. Maricopa Cnty. Bd. of Supervisors, 809 F. Supp. 2d 1084, 1091 (D. Ariz. 2011) ("Th[e] general rule [that only one plaintiff needs standing to make an issue justiciable] does not strictly prohibit a district court, in a multiple plaintiff case such as this, from considering the standing of the other plaintiffs even if it finds that one plaintiff has standing.").

[51] Freeman v. Corzine, 629 F.3d 146, 154 (3d Cir. 2010) ("Prudential standing 'require[s] that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating

standing should not concern itself with zone of interests:

> We have previously categorized the zone-of-interests requirement as one of three components of prudential standing. But in Lexmark International, Inc. v. Static Control Components, Inc., the Supreme Court criticized the placement of the zone-of-interests requirement within the rubric of prudential standing. The Court clarified that the zone-of-interests requirement goes to whether a particular plaintiff has a cause of action under a given law, not a plaintiff's standing.[52]

As found in the earlier sections, Kyko does not have constitutional standing, the highest form of standing that deprives the court of subject matter jurisdiction over the claims asserted in the complaint. Whether Kyko falls into the zone of interests, or does or does not have prudential standing, is irrelevant. Kyko does not have constitutional standing as a creditor because it does not have an injury-in-fact. To the extent a cause of action lies under the surviving counts, those claims belong to Abilius and cannot be separately pursued by a creditor.

Just as it does not have constitutional standing under the tortious interference and conspiracy claims, Kyko does not have that standing in Counts 9 and 10. Section 362(k) by its terms requires the movant or plaintiff to have an injury.[53]

## **CONCLUSION**

Based on the foregoing, Kyko does not have an injury-in-fact related to the claims it asserts in the Complaint and thus does not have constitutional standing in this adversary

---

abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based.")

[52] Maher Terminals, LLC v. Port Auth. of N.Y. & N.J., 805 F.3d 98, 105 (3d Cir. 2015) (citations omitted).

[53] 11 U.S.C. § 362(k) provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this sections shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

(Emphasis added.)

proceeding. Kyko Global, Inc. and Kyko Global Gmbh are hereby DISMISSED as plaintiffs in this adversary proceeding.

By separate order, the Court will STRIKE Original § 3.1(c) from the Confirmed Plan and substitute Revised § 3.1(c) in its place.

Dated:  December 29, 2017

_____
GREGORY J. TADDONIO   cgt
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Plaintiffs
Defendants
Kathleen J. Goldman, Esq.
Jayson M. Macyda, Esq.
Lawrence Del Rossi, Esq.
Richard Parks, Esq.
Christina Orr Magulick, Esq.
Office of the U.S. Trustee